985 So.2d 684 (2008)
X.H., A Child, Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-3732.
District Court of Appeal of Florida, Fifth District.
July 3, 2008.
*685 James S. Purdy, Public Defender, and Thomas J. Lukashow, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellee.
EVANDER, J.
X.H. was adjudicated delinquent after being found guilty of robbery by snatching.[1] At the time of the disposition hearing, X.H. was on probation for possession of counterfeit drugs and resisting arrest without violence. X.H. also had pending charges for retail theft, resisting arrest without violence, resisting recovery of merchandise, and violation of probation.
The Department of Juvenile Justice ("DJJ") recommended low-risk residential placement. After a lengthy disposition hearing in which the primary points of discussion were the child's needs and the risk the child posed to public safety, the trial court declined to follow DJJ's recommendation and instead ordered placement into a moderate-risk residential program. X.H. contends that the trial court erred because it did not make reference to the characteristics of the restrictiveness level. We disagree and, accordingly, affirm.
A trial court may disregard DJJ's recommendation provided that the court states the reasons for doing so and makes reference to the characteristics of the restrictiveness level and the needs of the child. See J.S. v. State, 971 So.2d 992 (Fla. 5th DCA 2008); G.L. v. State, 937 So.2d 801 (Fla. 5th DCA 2006); T.N. v. State, 929 So.2d 1133 (Fla. 5th DCA 2006); S.S.M. v. State, 814 So.2d 1234 (Fla. 5th *686 DCA 2002). The trial court's reasons must also be supported by a preponderance of evidence. See J.A.R. v. State, 923 So.2d 604 (Fla. 2d DCA 2006); K.N.M. v. State, 793 So.2d 1195 (Fla. 5th DCA 2001).
Here, the trial court was advised, without objection, of the following characteristics of a DJJ low-risk residential program:
Most placements [in low-risk residential programs] result from first and second degree misdemeanors to third degree felonies. Patterns of offending are infrequent and nonviolent, and are orienting toward property crimes rather than against people.
As to moderate-risk placement, the trial court was advised that the majority of those youths had committed serious property offenses and were typically repeat violators. X.H.'s psychological evaluation reflected a diagnosis of Conduct Disorder, severe, and a recommendation for placement in a program designed to develop, inter alia, anger management and impulse control skills. The psychological evaluation also indicated that without treatment X.H. had a high potential to engage in risky behavior.
X.H. does not challenge the trial court's finding that X.H.'s needs would best be met by a moderate-risk placement. X.H.'s only challenge is to the trial court's alleged failure to adequately reference the characteristics of the restrictiveness levels for low-risk and moderate-risk placements.
It is evident from the record that the trial judge believed that X.H. posed more than a "low-risk" to the public. The trial court found that X.H. had committed a violent crime and that his willingness to use force while "face-to-face" with a theft victim was of significant concern. The trial judge then addressed X.H. as to the severity of the offense "because I'm concerned about whether you're a threat to members of society." X.H.'s subsequent downplaying of the seriousness of his offense apparently did not alleviate the judge's concerns because after hearing X.H.'s response, the judge stated to X.H. "and to you it's no big deal, to them [victims] it's a huge deal." The trial judge then engaged in a dialogue with X.H. and X.H.'s mother regarding X.H.'s anger issues. Throughout the disposition hearing, the trial judge emphasized the need for X.H. to receive treatment to develop anger management and impulse control skills. The trial court's concern regarding X.H.'s lack of anger management and impulse control skills was clearly related not only to the child's needs but also to the level of his risk to the public.
The record reflects that the trial judge conducted an extensive hearing in an attempt to ascertain the needs of the child and the risk the child posed to the public. The trial court was advised, without objection, of the characteristics of the restrictiveness levels for low-risk and moderate-risk level placements. The trial judge was aware of X.H.'s record and his pending charges. The trial court also appeared to give great weight to the findings and recommendations set forth in X.H.'s psychological evaluation. Given these circumstances, we conclude that the trial court adequately referenced the characteristics of the restrictiveness level when it made findings as to the severity of the offense, X.H.'s failure to recognize the seriousness of his criminal conduct, and X.H.'s need for the development of anger management and impulse control skills.
AFFIRMED.
PALMER, C.J. and LAWSON, J., concur.
NOTES
[1] § 812.13(2)(b), Fla. Stat. (2007).